# In the United States Court of Federal Claims

No. 22-1037
(Filed Under Seal: October 23, 2023)
Reissued: November 8, 2023[1]

|  |  |
|---|---|
| NAVARRE CORPORATION, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| THE UNITED STATES, | ) |
| | ) |
| Defendant, | ) |
| | ) |
| and | ) |
| | ) |
| KTS SOLUTIONS, INC., | ) |
| | ) |
| Defendant-Intervenor. | ) |
| | ) |

*William M. Weisberg,* Law Offices of William M. Weisberg, McLean, VA, for plaintiff.

*Joshua A. Mandlebaum*, U.S. Department of Justice, Civil Division, Washington, DC, for defendant.

*Sarah Christine Reida*, Legal Meets Practical, LLC, Alpharetta, GA, for defendant-intervenor.

## OPINION AND ORDER

**SMITH**, **Senior Judge**

This post-award bid protest comes before the Court on the parties' Cross-Motions for Judgment on the Administrative Record. Plaintiff, Navarre Corporation ("Navarre"), challenges the United States Department of Veterans Affairs' (the "Agency" or the "VA") evaluation of quotes in response to Request for Quotations No. 36C24620Q0421 (the "Solicitation") for wheelchair van transportation services. *See* Complaint at 2–3, ECF No. 1 [hereinafter Compl.]. The Agency received three quotes and awarded the contract to KTS Solutions, Inc. ("KTS"). Plaintiff now challenges the award to KTS as arbitrary and capricious because (1) the Agency improperly waived a mandatory Solicitation requirement—the financial capacity to perform the contract—for KTS; and (2) the Agency's technical and past performance evaluations

---

[1]     An unredacted version of this opinion was issued under seal on October 23, 2023. The parties were given an opportunity to propose redactions, and those redactions are included herein.

unreasonably discredited Navarre's quote and improperly credited KTS's quote. *See id.* at 2–3, 6–7; Plaintiff's Motion for Judgment on the Administrative Record and Motion to Supplement the Administrative Record at 5, 9–10, ECF No. 27 [hereinafter Pl.'s MJAR].

In response, defendant argues that (1) the Agency followed the Solicitation criteria because the requirement to determine financial responsibility did not amount to a "definitive responsibility criterion" nor a "special standard" of responsibility; (2) the Agency reasonably evaluated Navarre's technical shortcomings, including its lack of direct communications with vehicles; and (3) KTS accurately represented its technical capability to perform the contract, including required vehicles and past performance, which the Agency reasonably documented in its evaluation. *See generally* Defendant's Cross-Motion for Judgment on the Administrative Record, ECF No. 28 [hereinafter Def.'s CMJAR]. Defendant-intervenor argues much the same as the Agency in that the award to KTS was reasonable. *See generally* Defendant-Intervenor's Cross-Motion for Judgment on the Administrative Record, ECF No. 29 [hereinafter Def.-Int.'s CMJAR].

For the following reasons, the Court grants defendant's and defendant-intervenor's Cross-Motions for Judgment on the Administrative Record and denies plaintiff's Motion for Judgment on the Administrative Record.

## I.    Background

### A.    The Solicitation

On January 5, 2022, the Agency published the Solicitation, seeking quotes for wheelchair van transportation services to the VA Health Care System in Salisbury, North Carolina. *See* Administrative Record 598–601 [hereinafter AR]. The Agency intended to issue a single award with a base period from the award date through September 30, 2022, and a one-year option period from October 1, 2022, through September 30, 2023. AR 598. The Solicitation envisioned a requirements-type contract, where the awardee must provide all personnel, equipment, supplies, facilities, transportation, tools, materials, parts, and supervision of patient during transportation to fulfill its contractual obligations. AR 601.

The Federal Acquisition Regulation ("FAR") requires that all contracts be awarded to "responsible prospective contractors only." FAR 9.103. The Solicitation thus stated that the Agency would only consider quotes from "offerors who are regularly established in the business called for and who are financially responsible and have the necessary equipment and personnel to furnish service in the volume required for all the times under this contract." AR 641–42. The Solicitation also stated that an "[a]ward shall be made to the responsible offeror whose offer, conforming to the requirements in this request for quote, will be most advantageous to the Government." AR 643.

The Agency evaluated offerors on a best value determination according to the following factors: (1) Technical; (2) Past Performance; and (3) Price. AR 643. The Technical factor was further divided into four subfactors: (I) Performance Work Statement ("PWS"); (II) Capability to Perform; (III) Licenses/Permits/Certifications; and (IV) Contingency Plan. AR 640, 644. The

first two subfactors are relevant here. For subfactor I, offerors were required to submit "a detailed technical and management approach for completion of all the requirements of the [PWS]." AR 644. The PWS included, among other things, a requirement for equipment in vehicles "to allow for direct communication, at all times, between drivers and staff of the VA Medical Center." AR 613. For subfactor II, Capability to Perform, offerors had to demonstrate current possession or the ability to obtain "the personnel, equipment, standards, work processes, and general resources to accomplish the requirements of the Performance Work Statement," including "a list of all vehicles in the fleet with the make, model, age, and equipment description (GPS, Lifts) of each vehicle and/or the ability to obtain such vehicles (i.e. business plan)." AR 644. The Agency used an adjectival ratings system, ranging from "unacceptable" to "excellent," to evaluate factor 1 as a whole. AR 644.

Under factor 2, Past Performance, offerors would be evaluated based on: "(1) the references provided by the offeror; and (2) data independently obtained from other government and commercial sources." AR 645. Offerors would receive a Past Performance rating ranging from "no confidence" to "substantial confidence," or for offerors where no performance record is identifiable or is limited, "unknown confidence." AR 645–46.

Finally, factor 3, Price, would be evaluated by determining the price reasonableness of offerors' quotes for both the base year and option years. AR 646.

**B.    The Agency's Evaluation of Offerors' Quotes**

The Agency received quotes from Navarre, KTS, and Amerifen Solutions. AR 983. The Agency's evaluation of Navarre's and KTS's quotes are relevant here.

**1.    KTS's Technical Evaluation**

The Agency assigned KTS's factor 1, Technical Approach, an overall adjectival rating of "Good," and documented strengths found within each subfactor. AR 866. For subfactor I—completing the PWS requirements—the Agency observed that KTS's proposal provided "compelling evidence regarding a full understanding of the [PWS] Requirements" by including



. AR 866. For subfactor II—Capability to Perform—the Agency again found "compelling evidence of [KTS's] capability to perform" because it had

. AR 866. Although KTS did not provide the names of its drivers and their pertinent information, the Agency awarded a strength to KTS for its plans to

. AR 866. The Agency found no weaknesses in KTS's Technical Approach. AR 867.

For factor 2, Past Performance, the Agency awarded KTS the highest rating, "Substantial Confidence," after reviewing five VA contracts through the Contractor Performance Assessment Report ("CPAR") and Federal Awardee Performance and Integrity Information System ("FAPIIS"). AR 885–86. For factor 3, Price, the Agency found KTS's price to be both fair and reasonable. AR 890.

Finally, the Agency examined KTS's financial responsibility and determined that KTS was "responsible within the definition of FAR 9.1-Standards," after completing "a detailed review and assessment of the information provided in SAM.gov and [FAPIIS]." AR 246–61, 789–93.

### 2.    Navarre's Technical Evaluation

The Agency evaluated Navarre's Technical Approach and assigned Navarre an overall adjectival rating of "Satisfactory"—a lower rating than KTS's "Good." AR 868. For subfactor I, the Agency found that Navarre "provided a detailed technical and management approach for completing most of the requirements of the [PWS]" with comprehensive training and safety procedures, and further noted that Navarre would not need start-up time being the incumbent contractor. AR 868. For subfactor II, the Agency awarded a strength to Navarre for explaining "███████████████████████████████████████████████████████████████████████ ██████████████████████" and recognized Navarre's ████████████████████████████████████████████████████████. AR 868.

The Agency, however, identified one weakness in Navarre's proposal. The Agency downgraded Navarre for failing to address how it intended to directly communicate with vehicles while in transit—an express requirement of the PWS. AR 868. The Agency explained that "[t]his is an important element for daily operations, wait times, weather related events, and emergencies" and that the "ability to easily communicate between a van service and the base station is paramount for this contract." AR 868. The Agency observed that Navarre's failure to explain its communication plan led the Agency to question whether Navarre fully understood the requirements of the Solicitation. AR 868.

For factor 2, Past Performance, the Agency awarded Navarre a "Satisfactory Confidence" rating—again, lower than KTS's "Substantial Confidence" rating—after reviewing fourteen VA contracts through the CPAR and FAPIIS. AR 885–86. For factor 3, Price, the Agency found Navarre's price to be both fair and reasonable. AR 890.

### 3.    The Award

On April 28, 2022, the Agency issued its Technical Evaluation Consensus and Best Value Determination. AR 863–92. The Agency rated offerors' proposals as follows:

| OVERALL VENDOR RATINGS | | | |
|---|---|---|---|
| | TECHNICAL | PAST PERFORMANCE | PRICE |
| KTS SOLUTIONS | GOOD | SUBSTANTIAL CONFIDENCE | $ 2,510,820.00 |
| AMERIFEN SOLUTIONS | UNSATISFACTORY | UNKNOWN CONFIDENCE | $ ▮▮▮▮▮▮ |
| NAVRAREE CORP | SATISFACTORY | SATISFACTORY CONFIDENCE | $ 2,863,875.00 |

AR 891.  Because KTS received the highest ratings and offered the lowest price, the Agency determined that its quote proposed the best value and notified plaintiff of its decision to award the contract to KTS on April 28, 2022.  AR 891–93.

### C.    Procedural History

Over the last three years, plaintiff has protested this award several times before both the Government Accountability Office ("GAO"), *see, e.g.*, *Navarre Corp.*, B-419088.2, 2021 CPD ¶ 113 (Comp. Gen. Mar. 4, 2021), and this Court, *see, e.g.*, *Navarre Corp. v. United States*, No. 21-1167 (Fed. Cl. May 3, 2022).  This Court's review, however, focuses on the most recent, relevant proceedings.

#### 1.    GAO Protest

On May 6, 2022, plaintiff protested the Agency's award to KTS at the GAO, mainly arguing that the Agency erred in evaluating KTS's proposal because KTS failed to meet financial responsibility and technical capability requirements.  AR 941–48.  On July 29, 2022, the GAO issued a decision denying plaintiff's protest, concluding that (1) financial capability was not a definitive responsibility criterion; (2) Navarre's allegation that the Agency's past performance evaluation was inadequate and lacked merit because the Agency's evaluation was sufficiently documented; (3); the Agency reasonably assigned a weakness to Navarre's quotation for failing adequately to explain its communication plan with fleet vehicles, a requirement of the Solicitation, and awarded a strength to KTS because the Solicitation only required that the vendor demonstrate an *ability to obtain* the vehicles; and (4) Navarre's challenge to the Agency's best value determination is meritless after denying the aforementioned challenges.  AR 1223–31; *see Navarre Corp.*, B-419088.4, 2022 CPD ¶ 204 (Comp. Gen. July 29, 2022).

#### 2.    Instant Protest at the United States Court of Federal Claims

On August 22, 2022, plaintiff filed its Complaint with this Court, alleging errors in the Agency's evaluation.  *See* Compl. at 2–3.  On September 27, 2022, plaintiff filed its first Motion to Supplement the Administrative Record seeking "leave to conduct a limited set of depositions of the Contracting Officer and the technical and past performance evaluation team(s)."  *See* Plaintiff's Motion to Supplement or Complete the Administrative Record at 4, ECF No. 16 [hereinafter Pl.'s First Mot. to Supp.].  On October 11, 2022, defendant filed an unopposed Motion to Remand the case for the Agency to reconsider its "determination that intervenor, [KTS], has adequate financial resources to perform the contract, or the ability to obtain them

(*i.e.*, 'financial responsibility').'" *See* Defendant's Unopposed Motion for a Partial Remand at 1, ECF No. 19 [hereinafter Def.'s Mot. for Remand]. On October 12, 2022, the Court granted defendant's Motion and remanded the case to the Agency for forty-five days. *See* October 12, 2022 Order, ECF No. 20.

On November 28, 2022, the parties informed the Court that the Agency had "determined that intervenor, [KTS], has adequate financial resources to perform the contract, or the ability to obtain them" and had declined to reconsider its earlier determination of KTS's financial responsibility. Joint Status Report at 1, 10, ECF No. 22. Accordingly, plaintiff requested to continue with this protest. *See id.* at 1.

On December 27, 2022, plaintiff filed its Motion for Judgement on the Administrative Record and its second Motion to Supplement the Administrative Record.[2] *See generally* Pl.'s MJAR. On January 13, 2023, defendant and defendant-intervenor filed their Cross-Motions for Judgement on the Administrative Record and Responses to Plaintiff's Motion to Supplement. *See generally* Def.'s CMJAR; Def.-Int.'s CMJAR. On January 20, 2023, plaintiff filed its Response and Reply. *See* Plaintiff's Response and Reply to Defendant's and Defendant-Intervenor's Cross-Motions for Judgment on the Administrative Record and Opposition to Motion to Supplement, ECF No. 30 [hereinafter Pl.'s Reply]. On January 27, 2023, defendant and defendant-intervenor filed their Replies. *See* Defendant's Reply in Support of its Motion for Judgment on the Administrative Record, ECF No. 31 [hereinafter Def.'s Reply]; Defendant-Intervenor's Reply in Support of its Motion for Judgment on the Administrative Record, ECF No. 32. On April 11, 2023, the Court held Oral Argument. The parties' motions are fully briefed and ripe for review.

## II.    Standard of Review

The Tucker Act grants this Court jurisdiction over bid protest actions. 28 U.S.C. § 1491(b)(1). This Court evaluates bid protests under the Administrative Procedure Act's ("APA") standard of review for agency actions, which may be set aside if they are "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law." *See* 28 U.S.C. § 1491(b)(4) (incorporating 5 U.S.C. § 706 by reference); *see also Bannum, Inc. v. United States*, 404 F.3d 1346, 1351 (Fed. Cir. 2005). The Court will "interfere with the government procurement process 'only in extremely limited circumstances,'" *EP Prods., Inc. v. United States*, 63 Fed. Cl. 220, 223 (2005) (quoting *CACI, Inc.–Federal v. United States*, 719 F.2d 1567, 1581 (Fed.Cir.1983)), and it will not substitute its judgment for that of the agency, *Bowman Transp., Inc. v. Ark.-Best Freight Sys., Inc.*, 419 U.S. 281, 285–86 (1974).

---

[2]    Plaintiff's Motions to Supplement the Administrative Record and defendant's Responses intertwine, in part, with other substantive arguments in the parties' Motions for Judgment on the Administrative Record. Specifically, plaintiff sought to include KTS's bankruptcy filings—filed over six months after award of the instant contract—in support of its argument that the Agency misevaluated KTS's financial capabilities. Pl.'s MJAR at 10; *see also* Pl.'s First Mot. to Supp. On February 28, 2023, the Court denied plaintiff's Motions to Supplement the Administrative Record, ECF Nos. 16, 27, finding that supplementation of materials either not considered by the Agency in rendering its decision or with material that amounts to discovery inappropriate in this case. *See* February 28, 2023 Order, ECF No. 33.

"[A] bid award may be set aside if either: (1) the procurement official's decision lacked a rational basis; or (2) the procurement procedure involved a violation of regulation or procedure." *Impresa Construzioni Geom. Domenico Garufi v. United States*, 238 F.3d 1324, 1332 (Fed. Cir. 2001) (collecting cases). Under the first prong, the Court recognizes that "contracting officers are 'entitled to exercise discretion upon a broad range of issues confronting them' in the procurement process." *Id.* (quoting *Latecoere Int'l, Inc. v. United States Dep't of Navy*, 19 F.3d 1342, 1356 (11th Cir. 1994)). The test for courts is whether "the contracting agency provided a coherent and reasonable explanation of its exercise of discretion." *Id.* at 1332–33 (internal citation omitted). If "the court finds a reasonable basis for [an] agency's action, the court should stay its hand even though it might, as an original proposition, have reached a different conclusion as to the proper administration and application of the procurement regulations." *Honeywell, Inc. v. United States*, 870 F.2d 644, 648 (Fed. Cir. 1989) (citation omitted). When a challenge is brought under the second prong, the protestor must show that the alleged violation was a "clear and prejudicial violation of applicable statutes or regulations." *Impresa*, 238 F.3d at 1333 (citation omitted). Therefore, if the agency's procurement decision lacked a rational basis or is contrary to law, the court will then "determine, as a factual matter, if the bid protester was prejudiced by that conduct." *Bannum*, 404 F.3d at 1351; *see also Sys. Stud. & Simulation v. United States*, 22 F.4th 994, 996–98 (Fed. Cir. 2021). "In either case, however, the protestor bears the 'heavy burden' of proving the lack of a rational basis or a violation of law by a preponderance of the evidence." *Benchmade Knife Co. v. United States*, 79 Fed. Cl. 731, 735 (2007).

A party may file a motion for judgment on the administrative record requesting that the Court assess "whether the administrative body, given all disputed and undisputed facts appearing in the record, acted in a manner that complied with the legal standards governing the decision under review" pursuant to Rule 52.1 of the Rules of the United States Court of Federal Claims. *See Supreme Foodservice GmbH v. United States*, 109 Fed. Cl. 369, 382 (2013). On such a motion, the parties are limited to the administrative record, and the Court must make findings of fact as if it were conducting a trial on a paper record. R. Ct. Fed. Cl. 52.1; *Bannum,* 404 F.3d at 1354. The Court will then determine whether a party has met its burden of proof based on the evidence in the record. *Bannum*, 404 F.3d at 1355.

## III.    Discussion

Under the exacting standard discussed above, this Court now turns to the primary issues remaining in this protest: (1) whether the Agency reasonably evaluated the offerors' proposals and rationally awarded the contract to KTS; and (2) whether plaintiff has met its burden to warrant injunctive relief. For reasons discussed below, the Court agrees with defendant and defendant-intervenor and finds that the Agency acted rationally.

### A.    The Agency's Evaluation of Offerors' Proposals

Plaintiff argues that the Agency violated Solicitation provisions that allegedly required specific financial capability and vehicle availability determinations and erred in its technical evaluation of both offerors' proposals. Pl.'s MJAR at 9–10. Conversely, defendant responds

that the Solicitation did not contain specific language requiring such determinations and its evaluation of proposals was rational. Def.'s CMJAR at 17–19. Defendant-intervenor argues the same. Def.-Int.'s MJAR at 7–11.

### 1.    Responsibility Determination

The federal government must purchase from, and award contracts to, "responsible prospective contractors only." FAR 9.103(a). The FAR defines the standards for such responsibility determinations. *See* FAR 9.104. All offerors must meet the general standards of responsibility, *see* FAR 9.104-1, but an agency may impose additional specific, objective, or mandatory standards to measure an offeror's ability to perform particular tasks within the contract, *see* FAR 9.104-2. The latter, which are also referred to as "definitive responsibility criteria," must be expressly identified in the solicitation. FAR 9.104-2(a).

Plaintiff argues that the Agency improperly waived a mandatory requirement in the Solicitation—specifically, a definitive responsibility criterion—by awarding the contract to KTS when it allegedly lacked the financial capability and vehicle availability to perform the contract. Compl. at 6; Pl.'s MJAR at 9–10. The Court, however, cannot discern which mandatory requirement the Agency waived, because plaintiff did not identify a Solicitation requirement with specificity in its briefings. The only requirement that plaintiff vaguely references in the factual background of its briefing is the requirement titled, "QUALIFICATIONS," within the Solicitation's Quote Preparation Instructions, Compl. at 5, Pl.'s MJAR at 7. This subsection states, "Quotes will be considered only from offerors who are regularly established in the business called for and *who are financially responsible* and have the necessary equipment and personnel to furnish service in the volume required for all the items under this contract," AR 641–42 (emphasis added).

Defendant responds that the Solicitation's requirement to be "'financially responsible' is not specific, objective, or capable of being evaluated on a pass/fail basis," and therefore is "not a 'definitive responsibility criterion' or a 'special standard' of responsibility." Def.'s CMJAR at 18. Defendant further argues that, because the requirement to be "financially responsible" was not a definitive responsibility criterion, the Agency need only "assess financial responsibility pursuant to the *general* standards" in the FAR that govern contractor responsibility. *Id.* at 19 (citing FAR 9.104-1, 9.104-3).

Here, the Solicitation does not expressly identify any special standards for assessing a potential offeror's responsibility nor does plaintiff name any "definitive responsibility criteria" in its briefings. *See* AR 598–666; Compl.; Pl.'s MJAR. Therefore, FAR 9.104-2 does not apply, and this Court will examine the Agency's responsibility determination set forth under the general standards in FAR 9.104-1. This regulation requires prospective contractors, among others, to "[h]ave adequate financial resources to perform the contract, or ability to obtain them" through "acceptable evidence." FAR 9.104-1(a).

Responsibility decisions, including determinations of financial responsibility, "are largely a matter of judgment, and contracting officers are normally entitled to considerable discretion and deference in such matters. When such decisions have *a rational basis* and are *supported by*

*the record*, they will be upheld." *Bender Shipbuilding & Repair Co. v. United States*, 297 F.3d 1358, 1362 (Fed. Cir. 2002) (emphasis added).  This Court has long held that

> financial ability to perform a government contract does not mean that the contractor must have on hand adequate cash to pay for the entire cost of performance. . . . We think the contractor must have available *at the time of the contract award* reasonable financial resources in the light of business custom and practice either on hand or through its customary lines of credit, to finance the expected cost of production.

*Litchfield Mfg. Corp. v. United States*, 167 Ct. Cl. 604, 611 (1964) (emphasis added).  For example, in *Bender Shipbuilding*, an agency found the awardee financially responsible even though the awardee had filed for bankruptcy under chapter 11 of the U.S. Bankruptcy Code, which generally allows a debtor to propose a plan of reorganization to keep its business alive and pay creditors over time.  297 F.3d at 1362–63; *see generally* 11 U.S.C. §§ 1101–1195.  The Federal Circuit affirmed this Court's ruling to sustain the agency's decision.  Because the contracting officer "examined all of the relevant financial data before him, and then carefully articulated a detailed explanation for his decision," the contracting officer's decision to find awardee financially responsible "was the product of reasoned decision making and was amply supported by facts in the record." *Id.* at 1362.  More recently, in *Communication Construction Services, Inc. v. United States*, this Court upheld a contracting officer's determination that the contract awardee was financially responsible despite facing serious debt and other financial challenges, because the agency was "fully aware" of awardee's financial standing and found that it was "performing per its agreed loan terms" and "was comfortable with [awardee]'s ability to meet its obligations." 116 Fed. Cl. 233, 272–73 (2014).

Here, the Agency examined defendant-intervenor's financial responsibility at the outset of this procurement and found that "KTS Solutions, Inc. is responsible within the definition of FAR 9.104-Standards." AR 793 (alteration in original).  On remand, the Agency "considered additional information" and affirmed its initial evaluation that "intervenor, KTS Solutions, Inc. (KTS), has adequate financial resources to perform the contract, or the ability to obtain them (i.e., 'financial responsibility')." Joint Status Report at 1, ECF No. 22.  Specifically, the Agency reviewed both a Dun and Bradstreet report that assessed KTS's financial stability and associated risk; and a Contractor Responsibility Assessment from FedDataCheck, a private software tool that collates contractor responsibility data for each contract prior to award to determine responsibility or non-responsibility. *Id.* at 6–7; *see generally* FEDDATACHECK, https://feddatacheck.com/ (last visited October 23, 2023).  The Agency assessed this information against the criteria in FAR 9.104-1 and memorialized its findings in writing. *Id.* at 7–10.  The Contracting Officer noted that "KTS Solutions has some areas of concern" but the financial reports "d[id] not indicate an imminent failure of KTS Solutions ability to perform" and "the risk of a performance due to lack of financial resources is extremely low and acceptable." *Id.* at 9.  In sum, the Agency examined the relevant financial data before it—not once, but twice—and articulated a detailed explanation for its determination. *See Bender Shipbuilding*, 297 F.3d at

1362–63.  This Court sustains the Agency's financial responsibility determination for KTS because it reasonably follows the requirements outlined in FAR 9.104-1.

The Court notes that plaintiff's allegations regarding KTS's financial responsibility and vehicle availability were based in part on KTS's bankruptcy filing, which referenced potential repossession of KTS's vehicle fleet.  Pl.'s MJAR at 5–9 (referencing Exhibits A and B).  As discussed in this Court's February 28, 2023 Order, however, materials surrounding KTS's bankruptcy filing were *not* before the Agency during its responsibility evaluation, contract award, or reevaluation during remand.  A challenge to KTS's finances, at this stage in the procurement, is a matter of contract administration that must be brought under the Contract Disputes Act ("CDA"), 41 U.S.C. §§ 7101–7109.  *See Kellogg Brown & Root Servs., Inc. v. United States*, 117 Fed. Cl. 764, 770 (2014) (opining that "this matter is not within our bid protest jurisdiction, but instead involves questions of contract administration that must be brought under the CDA").  If the bankruptcy filing was before the Agency during its responsibility determination, the Agency may still reasonably have found defendant-intervenor financially responsible.  *See, e.g.*, *Bender Shipbuilding*, 297 F.3d at 1362.  But such is not the case here.  It is therefore improper for this Court to consider such evidence in its review of whether the Agency acted arbitrarily or capriciously during its evaluation of quotes.  *See* Feb. 28, 2023, Order at 4.

## 2.    Evaluation of Quotes

Plaintiff also alleges in its Complaint that the Agency erroneously evaluated quotes, such as when it "downgraded Navarre's proposal because of a perceived concern about Navarre drivers' ability to communicate directly with the [Agency], even though such communications presently occur multiple times each day," and "scored KTS' past performance more highly than either CPARS ratings or other inquiry justified."  Compl. at 7.  Plaintiff again has not provided *any* substantive elaboration or citation to the factual record regarding its own technical evaluation surrounding the communications requirement or KTS's past performance.  *See generally* Pl.'s MJAR.  Plaintiff simply alleges that the Agency "did not evaluate proposals as required by the terms of the Solicitation," and "[t]he fact that the [Agency] failed to follow material Solicitation requirements, shows that the [Agency] used a 'significantly different' basis of evaluation and award than that called for by the Solicitation."  Pl.'s MJAR at 9–10.  Unable to discern how plaintiff believes the Agency erred, this Court finds that plaintiff did not meet its "heavy burden" to show by a preponderance of the evidence that a "clear and prejudicial violation of applicable statutes or regulations" occurred or that the Agency acted unreasonably.  *Impresa*, 238 F.3d at 1333 (citations omitted).

This Court sustains the Agency's evaluation of proposals.  First, the Agency assigned a weakness to Navarre for its technical and management approach and justified its evaluation as follows:

> NAVARRE failed to state in their proposal how they intend on having direct communications with vehicles while in transit. This is an important element for daily operations, wait times, weather related events, and emergencies. The ability to easily communicate between a van service and a base station is paramount for this contract. NAVARRE's failure to explain how they intend to communicate leaves some questions about their understanding of the requirements.

AR 868. Despite plaintiff's assertion that the Agency improperly downgraded its proposal on this basis, plaintiff's latest proposal reveals that it did not include a communication plan, which was a requirement under the Solicitation. *Compare* AR 171, 175–76 (initial proposal includes specific communication plan), *with* AR 1178 (final proposal revision contains no communication plan as required by Solicitation Section B.1); *see* AR 605 (communication plan requirement in Solicitation Section B.1). The lack of a communication plan from plaintiff's final proposal renders the Agency's assignment of a weakness reasonable. *See, e.g.*, *Impresa*, 238 F.3d at 1333; AR 868.

Second, plaintiff facially claims that the Agency misevaluated KTS's past performance, but the record demonstrates the opposite. Here, the Agency thoroughly examined KTS's past performance and documented its evaluation with no less than a paragraph for each past contract reviewed. AR 885–86. This Court finds the Agency's evaluation of KTS's past performance rational and not arbitrary, capricious, nor an abuse of its discretion. *See Impresa*, 238 F.3d at 1333.

## B.   Injunctive Relief

Plaintiff also seeks injunctive relief from this Court to set aside the award to KTS and direct the award to plaintiff, or in the alternative, permit a reevaluation of offers with final proposal revisions. Compl. at 7; Pl.'s MJAR at 10–11. Defendant argues that plaintiff failed to meet the burden necessary for injunctive relief. Def.'s CMJAR at 34–35.

The Tucker Act provides this Court with authority to award injunctive relief in bid protests if proper. *See* 28 U.S.C. § 1491(b)(2). Injunctive relief "may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *See Samsara Inc. v. United States*, 166 Fed. Cl. 457, 465 (2023). As discussed above, plaintiff has not demonstrated its success on the merits of its bid protest nor irreparable harm; therefore, plaintiff has not made a "clear showing" such that the Court finds no need to examine plaintiff's request for injunctive relief, which is hereby denied.

**IV.     Conclusion**

For the reasons set forth above, defendant's and defendant-intervenor's CROSS-MOTIONS for Judgment on the Administrative Record, ECF Nos. 28, 29, are hereby **GRANTED**.  Plaintiff's MOTION for Judgment on the Administrative Record, ECF No. 27, is hereby **DENIED.**  The Clerk is directed to enter judgment in favor of defendant and defendant-intervenor consistent with this opinion.

**IT IS SO ORDERED.**

s/ *Loren A. Smith*

Loren A. Smith,
Senior Judge